640 F.2d 654
 IDEAL MUTUAL INSURANCE COMPANY, a New York Corporation,
Plaintiff-Appellee,
v.
C. D. I. CONSTRUCTION, INC., a Florida corporation, et al., Defendants,
Shan Hull Sbaldigi, as Personal Representative of the Estate
of Leonard William Sbaldigi and C. D. I.
Construction, Inc., a Florida
corporation, Defendants- Appellants.
 No. 79-3585.
 United States Court of Appeals,
Fifth Circuit.
 
 Unit B
 March 25, 1981.
 Michael P. Smodish, Boynton Beach, Fla., for Shan Hull Sbaldigi.
 McCune, Hiaasen, Crum, Ferris & Gardner, G. Ware Cornell, Jr., Fort Lauderdale, Fla., for plaintiff-appellee.
 Appeals from the United States District Court for the Southern District of Florida.
 Before TUTTLE, TJOFLAT and KRAVITCH, Circuit Judges.
 KRAVITCH, Circuit Judge.
 
 
 1
 This diversity action arising under Florida law presents the question of whether the pilots' failure to hold "type ratings" for the make and model of aircraft flown suspended coverage of the aircraft liability insurance policy at the time of the crash. The policy required, inter alia, that "(o)nly (a) pilot or pilots ... with ratings as required by the Federal Aviation Administration for the flight involved will operate the aircraft in flight."[1]
 
 
 2
 Appellant C.D.I. Construction, Inc. (C.D.I.), through its agent Charles Ivey, purchased a Lockheed-18 Lodestar (L-18) aircraft in January, 1978. On January 27, 1978, appellee Ideal Mutual Insurance Company (Ideal) issued an aircraft hull liability policy on the plane to C.D.I. Early in the morning of May 1, 1978, the plane crashed, killing the three men aboard: two pilots, Dodd Chairs and Lawrence Mudgett, and Leonard Sbaldigi, a passenger. Which pilot was flying the plane at the time of the crash is unknown.[2] Appellants concede that neither Chairs nor Mudgett were "type rated" for the Lodestar, as required by FAA regulations. Ideal brought this declaratory judgment action, seeking a determination of its rights and obligations under the policy.[3]
 
 
 3
 The parties stipulated to the issues for trial: 1) whether coverage of the policy was suspended because neither pilot had a type rating for the Lodestar, 2) whether coverage was suspended because neither pilot had 100 logged hours in a Lodestar, and 3) whether coverage was suspended because there was not a valid and effective airworthiness certificate in force at the time of the crash.[4] The court denied Ideal's motion for summary judgment on the type rating issue so that it might receive evidence regarding the parties' intent. After a bench trial, the court made findings of fact and conclusions of law to the effect, inter alia, that neither pilot was type rated, neither had 100 logged hours in a Lodestar, and for these reasons the policy's coverage was suspended during the fatal flight. It did not reach the airworthiness certificate issue.
 
 
 4
 On appeal C.D.I. challenges both rulings and additionally contends that even if neither pilot had satisfied the 100 logged hours in a Lodestar requirement, breach of that provision was not material and therefore did not suspend coverage. We conclude the district court correctly resolved the first issue. Since that determination is dispositive of this appeal, we do not reach issues two and three.
 
 
 5
 Because the facts regarding the type rating issue are not in dispute, we here decide a question of law. As indicated supra, appellants concede that the FAA requires that pilots hold type ratings, that neither pilot was type rated for the Lodestar, and that the flight thus violated FAA regulations. They argue, however, that whether coverage of the policy was suspended turns not on whether FAA regulations were violated, but on the terms of the policy, and that the policy did not require type ratings. Appellees agree that the policy controls but contend that by its terms the policy specifically required compliance with FAA requirements.
 
 
 6
 The following provisions of the policy pertain to pilots of the aircraft:
 
 EXCLUSIONS
 This Policy does not apply:
 
 7
 2. to any occurrence or to any loss or damage occurring while the aircraft is operated in flight by other than the pilot or pilots set forth under Item 7 of the Declarations;
 
 Item 7 of the Declarations provides:
 
 8
 PILOT CLAUSE: Only the following pilot or pilots holding valid and effective pilot and medical certificates with ratings as required by the Federal Aviation Administration for the flight involved will operate the aircraft in flight:
 
 SEE ENDORSEMENT # 3
 Endorsement No. 3 provides:
 PILOT CLAUSE ENDORSEMENT
 
 9
 In consideration of an additional premium of $Included, it is hereby understood and agreed that Item 7 of Declarations, Pilot(s), is completed to read as follows:*
 
 
 10
 [X] IN RESPECT OF MULTI-ENGINE AIR-CRAFT
 
 
 11
 XX Commercial pilots, provided each has a minimum of
 
 
 12
 xx 2,500 total logged hours
 
 
 13
 xx including at least
 
 
 14
 xx 1,000 hours in multi-engine aircraft
 
 
 15
 _____ hours in center line trust aircraft
 
 
 16
 _____ multi-engine rotary wing aircraft
 
 
 17
 xx of which at least
 
 
 18
 xx100 hours have been in make and model
 
 
 19
 Other: Jim Walker.
 
 
 20
 Each pilot must be multi-engine rated.
 
 
 21
 This endorsement effective 1/27/78 Attached to and forming part of policy AHL006590
 
 
 22
 Issued to C.D.I. Construction, Inc.
 
 
 23
 All other terms and conditions remain unchanged.
 
 The district court concluded:
 
 24
 These provisions require, (inter alia,) that
 
 
 25
 1) pilots have valid and effective pilot certificates, as required by the Federal Aviation Administration ...
 
 
 26
 Neither pilot was type rated in the Lodestar and therefore there is no coverage for the fatal flight.
 
 
 27
 Appellants argue that the court erred because:
 
 
 28
 1) A conflict existed between Item 7 of the Declarations requiring that pilots hold "valid and effective pilot certificates with ratings as required by the FAA for the flight involved," and that portion of Endorsement 3 requiring that "(e)ach pilot must be multi-engine rated." Since Endorsement 3 was typewritten and Item 7 part of the printed policy, the Endorsement controls.
 
 
 29
 2) Even if the portion of Item 7 relating to FAA requirements applies, that requirement is ambiguous in that it does not use the words "type rating" or require FAA ratings "as required for the aircraft involved." Since ambiguities must be resolved in favor of the insured, the court erred in holding that coverage was suspended because neither pilot had a type rating.
 
 
 30
 Both of appellants' arguments fail. Under Florida law, which applies to issues of policy construction, the basic rule is: where there is an ambiguity such that two (or more) reasonable interpretations can fairly be made, the court will choose that interpretation favoring the insured. Shelby Mutual Ins. Co. v. Manchester, 376 So.2d 266 (Fla. 3rd DCA 1979); Travelers Ins. Co. v. C. J. Gayfer's & Co., 366 So.2d 1199 (Fla. 1st DCA 1979); Tropical Park, Inc. v. U. S. Fidelity & Guar., 357 So.2d 253 (Fla. 3rd DCA 1978). The same rule applies to conflicting provisions. Government Emp. Ins. Co. v. Burak, 373 So.2d 89 (Fla. 3rd DCA 1979). However, where the terms are clear and unambiguous or only one logical interpretation consistent with the intent of the parties exists, the court must give the policy that meaning. Ward v. Nationwide Mut. Fire Ins. Co., 364 So.2d 73 (Fla. 2nd DCA 1978); American Mfrs. Mut. Ins. Co. v. Horn, 353 So.2d 565 (Fla. 3rd DCA 1977). In other words, disputes are to be resolved in favor of the insured "(o)nly when a genuine inconsistency, uncertainty, or ambiguity in meaning remains after resort to the ordinary rules of construction.... (Such rule) does not allow courts to rewrite (insurance) contracts, add meaning that is not present, or otherwise reach results contrary to the intention of the parties." Excelsior Ins. Co. v. Pomona Park Bar & Package Store, 369 So.2d 938, 942 (Fla.1979) (citations omitted). With these principles in mind, we address appellants' first contention.
 
 
 31
 Citing, inter alia, Firemen's Fund Insurance Co. v. McDaniel, 187 F.Supp. 614 (N.D.Miss.1960), affirmed, 289 F.2d 926 (5th Cir. 1961), appellants correctly state the law governing conflicts between typewritten and printed provisions in an insurance policy: typewritten provisions supersede printed provisions where the two conflict. Cf. Allegheny Mut. Cas. Co. v. State, 176 So.2d 362 (Fla. 2nd DCA 1965).[5] The difficulty with appellants' argument, however, is that the relevant provisions Item 7 requiring FAA ratings for the flight involved and Endorsement 3 requiring that each pilot be multi-engine rated do not conflict. To hold an FAA rating to fly a Lockheed Lodestar, a pilot, in addition to other requirements, must be multi-engine rated. 14 C.F.R. § 61.63(d)(3)(i).[6] Appellants thus contend that these words in Endorsement 3 meant that this was the only FAA requirement mandated by the insurer. In other words, they would have us read the typewritten phrase as negating the printed requirement of Item 7. We decline to do so. Whether the typewritten requirement was superfluous[7] or for the purpose of requiring that both pilots first and copilot be multi-engine rated, as appellees contend,[8] it did not in our view negate the requirement contained in Item 7 that the pilots have FAA ratings for the flight involved. This is made clear by inspection of the policy itself and by reference to other courts' construction of analogous provisions.
 
 
 32
 Inspection of the policy as a whole[9] renders appellants' argument that the endorsement "each pilot must be multi-engine rated" negated the printed FAA ratings requirement baseless. Endorsement 3 states: "In consideration of an additional premium of $ Included, it is hereby understood and agreed that Item 7 of Declarations, Pilot(s), is completed to read as follows ...," thus indicating that the endorsement is to be read not in place of Item 7, but in addition thereto. Secondly, the policy and endorsement were issued on the same date, reinforcing the conclusion that the latter was an addendum to the printed form and not a subsequent replacement. Finally, the last line of the endorsement in and of itself answers appellants' argument. It states: "All other terms and conditions remain unchanged."Moreover, the Georgia Court of Appeals held that a similar endorsement did not negate almost identical basic policy requirements. Item 7 of the printed policy at question in Ranger Ins. Co. v. Columbus-Muscogee Aviation, Inc., 130 Ga.App. 742, 204 S.E.2d 474 (1974), read: "Pilot Clause: Only the following pilot or pilots holding valid and effective pilot and medical certificates as required by the Federal Aviation Administration for the flight involved will operate the aircraft in flight...." There were three endorsements to Item 7, the third of which, Endorsement No. 19[10] read: "It is hereby agreed that as respects (the plane identified by FAA number) only, Item No. 7 of the declarations is amended to read as follows as respects rental purposes only: Private or commercial pilots having a minimum of 200 total logged hours including at least 15 hours in retractable gear aircraft and a check out in insured make and model ....[11] Nothing herein contained shall be held to vary, waive, alter or extend any of the terms, conditions, agreements or warranties of the policy, other than as above stated." (footnote supplied). At the time of its crash, the plane was flown by a pilot who had rented it and satisfied the requirements of Endorsement No. 19 but did not hold a valid and effective medical certificate. The aviation company argued that Endorsement No. 19 erased the medical certificate requirement contained in Item 7 and thus created an ambiguity to be resolved in its favor. The Georgia Court of Appeals responded:
 
 
 33
 (T)he instant policy shows that in order to have coverage the parties contracted that the basic requirements were for the aircraft operator to be "holding valid and effective pilot and medical certificates with ratings as required by the Federal Aviation Administration for the flight involved." ... (Endorsement No. 19) did not delete or remove either of the basic requirements concerning both the Federal Aviation Administration pilot and medical certificates. It simply added another use category, namely "rental purposes" for a specific airplane and prescribed pilot experience requirements for that use.... (T)he operator had to be either a private or commercial pilot with the minimum stated experience ... added to the basic requirements of Item 7. In short, the language requiring specified experience ... when (the plane) was rented was cumulative to the basic requirements of a proper pilot's license and medical certificate.
 
 
 34
 In Ranger, the endorsement also read, "Item 7 ... is amended to read as follows ...." The court held:
 
 
 35
 None of (the meanings of the word "amended") can be stretched to hold that there was an erasure or deletion in the instant policy of the two basic requirements.... Endorsement No. 19 did not create an ambiguity as to these requisites in Item 7 ... and did not give coverage where the operator of the rented aircraft failed to possess these basic requisites.
 
 
 36
 If anything, the words in the present endorsement "Item 7 ... is completed to read as follows" (rather than "amended to read") even more strongly compel that result. We therefore hold that Endorsement No. 3 requiring that "each pilot must be multi-engine rated" neither removed the basic requirement in Item 7 that the pilot hold those FAA ratings required for the flight involved, nor created an ambiguity to be resolved in favor of C.D.I.
 
 
 37
 Appellants next contend that the provision in Item 7 requiring that the pilot hold FAA ratings for the flight involved was itself ambiguous in that it failed to use the words "type rating" or specifically require ratings "for the aircraft involved." This argument is also unpersuasive.
 
 
 38
 The words "ratings as required ... for the flight involved" adequately denote inclusion of specific FAA regulations pertaining to time of day, instrument or visual control, and type of aircraft flown.[12] We and other courts have so held or have held analogous specific requirements embodied in broader terms. Thus, in Hollywood Flying Service, Inc. v. Compass Ins. Co., 597 F.2d 507 (5th Cir. 1979), applying Florida law we held that coverage of the policy was suspended where the policy stated that it did not apply unless the aircraft's "airworthiness certificate is in full force and effect," 597 F.2d at 508, and the certificate, though issued, was not in effect because certain specific FAA requirements were not met. The policy, as shown above, did not specifically allude to these requirements.[13] The Georgia Court of Appeals reached an analogous decision in Grigsby v. Houston Fire & Casualty Insurance Co., 113 Ga.App. 572, 148 S.E.2d 925 (1966). There the policy provided that the aircraft was to be piloted only by one holding "a valid and effective pilot certificate with proper rating as required by the Federal Aviation Agency for the flight involved." 113 Ga.App. at 573, 148 S.E.2d 925 (emphasis supplied). The plane crashed while flown by a pilot who had failed to make the number of takeoffs and landings within 90 days preceding the flight, as required by FAA regulations.[14] Under these circumstances, the court held there was no coverage. See also Baker v. Insurance Co. of North America, 10 N.C.App. 605, 179 S.E.2d 892 (1971) (no coverage where policy required that pilot be properly certified and rated under FAA regulations but did not specifically mention medical certificate, and medical certificate had lapsed). Hence, we conclude that the policy's requirement that pilots hold FAA ratings "for the flight involved" did not create an ambiguity as to whether a type rating was required. The court heard testimony regarding the parties' intent[15] and from this evidence could conclude that Ivey, as C.D.I.'s agent, had the requisite familiarity with type ratings.[16] Appellants' remaining argument[17] in this regard, that the application which does not require that pilots hold FAA ratings governs, is also without merit.[18]
 
 
 39
 We thus conclude that the policy required that pilots hold type ratings as required by the FAA. Appellants admit that neither pilot aboard the aircraft at the time of its crash held a type rating. Coverage of the policy was therefore suspended during its final flight. Accordingly, it is unnecessary to reach appellants' other arguments.
 
 
 40
 The judgment is AFFIRMED.
 
 
 
 [1]
 14 C.F.R. § 61.31(a)(1) provides:
 (a) Type ratings required. A person may not act as pilot in command of any of the following aircraft unless he holds a type rating for that aircraft:
 (1) A large aircraft (any aircraft with a maximum certified takeoff weight in excess of 12,500 pounds) (except lighter-than-air).
 (Appellants admit that the Lockheed-18 (Lodestar) was a large aircraft under this provision.)
 
 
 [14]
 C.F.R. § 1.1, "General definitions" defines "type" as follows:
 (1) As used with respect to the certification, ratings, privileges, and limitations of airmen, means a specific make and basic model of aircraft, including modifications thereto that do not change its handling or flight characteristics. Examples include: DC-7, 1049, and F-27.
 
 
 [2]
 Since the burden under Florida law is on the insurer to prove non-coverage once the insured has shown a loss from causes within the policy's terms, U.S. Liability Ins. Co. v. Bove, 347 So.2d 678 (Fla. 3rd DCA 1977), Ideal must show that neither pilot met the policy's requirements. Ideal concedes that it bears the burden of proof in this regard
 
 
 [3]
 Shan Hull Sbaldigi, as Personal Representative of the Estate of Leonard Sbaldigi, is joined here with C.D.I. as defendant-appellant. (Ideal's amended complaint added as defendants the personal representatives of the decedents Chairs, Mudgett and Sbaldigi.) Ideal took a default judgment against the Estate of Lawrence Mudgett, and the Estate of Chairs was dismissed as a party to the suit with prejudice. Hence, C.D.I. and Shan Hull Sbaldigi are the only remaining appellants
 
 
 [4]
 A fourth issue, whether coverage was suspended because the final flight was for the purpose of sales demonstration, was dropped by agreement of the parties prior to trial
 
 
 *
 "X" where applicable
 
 
 [5]
 Allegheny also held that courts will resort to this rule only when the typed and printed clauses are irreconcilable; otherwise, they must give effect to all the terms and language of the contract
 
 
 [6]
 14 C.F.R. § 61.63(d) provides:
 (d) Type rating. An applicant for a type rating to be added on his pilot certificate must meet the following requirements:
 (3) He must pass a flight test showing competence in pilot operations under instrument flight rules in an aircraft of the type for which the type rating is sought or, in the case of a single pilot station airplane meet the requirements of paragraph (d)(3)(i) ....
 (i) The applicant must have met the requirements of this subparagraph in a multi-engine airplane for which the type rating is required.
 
 
 [7]
 In construing a statute, we will attempt first to give the words that meaning that will not render them nugatory. See, e. g., Zeigler Coal Co. v. Kleppe, 536 F.2d 398 (D.C. Cir. 1976). We will not necessarily do so with respect to a contract, especially where such construction would belie the apparent intent of the parties
 
 
 [8]
 The FAA requires only that the first pilot be multi-engine rated
 
 
 [9]
 An insurance policy must be construed according to the entirety of its terms. United Services Auto Ass'n v. McCray, 348 So.2d 6 (Fla. 3rd DCA 1977); American Mfrs. Mut. Ins. Co. v. Horn, supra
 
 
 [10]
 This endorsement was added to the policy after the date the policy was issued
 
 
 [11]
 FAA regulations did not require this provision, unlike that in question in the case at bar (unless appellants' argument, that the endorsement required that both pilots be multi-engine rated, is correct)
 
 
 [12]
 There was testimony at trial that these FAA regulations comprise three volumes; hence, there is likely always to be under-inclusion. That some policies, as appellants note, have used the words "for the flight and aircraft involved" although perhaps preferable is not dispositive
 
 
 [13]
 In Hollywood, citing Glades Flying Club v. Americas Aviation & Marine Insurance Co., 235 So.2d 18, 20 (Fla. 3rd DCA 1970), we also held:
 An aircraft insurance policy may validly condition liability coverage on compliance with a governmental regulation and, while non-compliance with such a regulation continues, the insurance is suspended as if it had never been in force. There need be no causal connection between the non-compliance and the loss of injury.
 
 
 [14]
 He also did not hold a current medical certificate, in violation of FAA regulations
 
 
 [15]
 Extrinsic evidence such as parol evidence is permissible to explain a latent ambiguity in an insurance policy. Drisdom v. Guarantee Trust Life Ins. Co., 371 So.2d 690 (Fla. 3rd DCA 1979). Here, the court did not conclude there was an ambiguity, but merely asked to hear testimony on the question
 
 
 [16]
 Ivey testified that at the time the policy was issued he had a student pilot certificate, that Dodd Chairs, one of the pilots, had asked Ivey to obtain instruction for him so that he might be qualified and checked out in the Lodestar since Chairs was not already so qualified, and that he (Ivey) saw that Mudgett's license "had a type rating for Lockheed, but I didn't see Lodestar." Moreover, two weeks after the crash Ivey, in a statement to Ideal, gave various examples of plane types, including the Lockheed-18 Lodestar. At trial, however, he testified that he did not know what a type rating was. The trial court was within its discretion in resolving any question of credibility here against C.D.I. Hodgson v. H. Morgan Daniel Seafoods, Inc., 433 F.2d 918 (5th Cir. 1970)
 
 
 [17]
 A subsidiary issue, not raised by appellants, is whether the FAA ratings requirement is a warranty or an exclusion under the policy. (The caption "Exclusions" is not conclusive on this score. See R. Keeton, Insurance Law Basic Text.) If it is a warranty, coverage is suspended only in the case of a material breach; if an exclusion, mere noncompliance is sufficient. This is an interesting and difficult question, and one with which the commentators and statutory drafters have not successfully grappled. See generally Keeton, supra at 169-180. Nonetheless, we believe the district court properly regarded the provision as an exclusion (although it did not discuss this question) because 1) in construing similar pilot clause provisions courts have uniformly held that they prescribe exclusions (we have found no authority otherwise); and 2) the provision in question meets the test suggested by Professor Keeton, which we deem salutary: "whether the clause ... is likely to serve as an instrument of overreaching, or whether instead it concerns a fact that the ordinary insured would realize was significant for insurance purposes." At 377. The clause in question, in the body of the policy under "Pilot Clause," was not of the "fine type" often used to disadvantage the insured. Moreover, it concerns a fact that the ordinary insured would and should realize is significant for insurance purposes with respect to an aircraft liability policy whether the pilot held those ratings required by the FAA. The ordinary insured is likely to realize that such ratings significantly bear upon the risk the insurer takes. See, e. g., Jim Hawk Chevrolet-Buick, Inc. v. Insurance Co. of North America, 270 N.W.2d 466 (Iowa 1978) (limiting coverage of aircraft liability policy to pilots with valid pilot certificates and ratings and certificates appropriate for flight and aircraft was reasonable as pertaining to increase of hazard caused by flying without ratings; did not infringe objectively reasonable expectation of insured)
 
 
 [18]
 Appellants' argument is that the pilots' failure to hold type ratings for the Lodestar did not suspend coverage because the insurance application made no mention of type ratings; in conflicts between the application and the policy, where it would result in greater coverage for the insured, the application controls. Appellants neglect to make clear, however, that this is true only where the insured demonstrates reliance upon the application, Mathews v. Ranger Ins. Co., 281 So.2d 345 (Fla.1973), mandate conformed to 284 So.2d 711, and here no reliance was shown. C.D.I. received the policy well before the crash. Moreover, appellants failed to introduce the application into evidence so it was not before the trial court. We therefore reject this argument