BILL HAMES SHOWS, INC.,
Plaintiff-Appellee,

v.

J. J. TAYLOR SYNDICATE # 173 et al., Defendants and Third Party Plaintiffs-Appellants,

Buster L. Brown et al., Third Party Defendants-Appellees.

No. 80–1888
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.
Unit A

April 10, 1981.

As Amended on Denial of
Rehearing Aug. 4, 1981.

Strasburger & Price, Patrick F. McGowan, Dallas, Tex., for defendants and third party plaintiffs-appellants.

Christopher, Bailey & Taylor, M. Ward Bailey, Hooper, Chappell & Broiles, Winfred Hooper, Jr., William R. Brown, Forth Worth, Tex., for plaintiff-appellee.

Before GEE, RUBIN and RANDALL, Circuit Judges.

GEE, Circuit Judge:

About four years ago an aircraft belonging to appellee Bill Hames Shows, Inc. crashed while on a test flight. Being tested was a device designed to permit hand control of the aircraft's rudder, customarily manipulated by foot pressure on a rudder bar or pedal. The underwriters insuring the aircraft refused payment of claims for its loss, claiming the installation of the hand control had destroyed coverage. Suit was filed, and trial resulted in a judgment for the insured and against the underwriters. Decision of their appeal to us turns on whether the addition of this device to the craft was a "major alteration." If so, the airworthiness certificate was suspended, and the insurance coverage, which required such a certificate, was likewise suspended at the time of the crash. A jury found, as a question of fact, that the addition of the hand control was not a major alteration. We conclude, as a matter of law, that it was.

Whether the presence of the hand control contributed to the crash is unknown and irrelevant to our inquiry; the question in

this diversity case is whether the insurance was or was not suspended. *Lineas Aereas Colombianas Expresas v. The Travellers Fire Insurance Co.*, 257 F.2d 150 (5th Cir. 1958); *Ranger Insurance Co. v. Bowie*, 574 S.W.2d 540 (Tex.1978). Deciding that question entails a mental journey that begins in the terminology of the aircraft's insurance policy and ends in the definition of "major alteration" found in the Federal Air Regulations (FAR's).

The craft's hull insurance policy withdrew coverage: "(c) While the aircraft is in flight unless its Airworthiness Certificate is in full force and effect." At the time of the crash the airworthiness certificate contained the following provision, which is in substance identical to the language of FAR 21.181, 14 C.F.R. § 21.181 (1980): "this Airworthiness Certificate is effective as long as the maintenance, preventive maintenance, and alterations are performed in accordance with Parts 21, 43 and 91 of the Federal Aviation Regulations . . . ." Other portions of the FAR's provide, and the parties agree, that it is only when a *major alteration* is performed that approval of the work by the Federal Aviation Administration (FAA) is required before the aircraft can return to service. FAR 43.3(a), 14 C.F.R. § 43.3(a) (1980) provides:

> Except as provided in this section, no person may maintain, rebuild, alter, or perform preventive maintenance on an aircraft, airframe, aircraft engine propeller, or appliance to which this Part applies. *Those items, the performance of which is a major alteration*, a major repair, or preventive maintenance, *are listed in Appendix A.*

(emphasis added). Turning to Appendix A, we find:

(a) *Major alterations.*

(1) *Airframe major alterations.* Alterations of the following parts and alterations of the following types, when not listed in the aircraft specifications issued by the F.A.A., are airframe major alterations:

(i) Wings

(ii) Tail surfaces

(iii) Fuselage

(iv) Engine mounts

(v) *Control system* . . . .

(Emphasis added.)

The hand-operated rudder control device in question was attached to the rudder pedals of the aircraft, a part of the control system. Neither the discrete device itself, nor the manner of its installation, nor the aircraft with the device installed had been approved for service by the FAA at the time of the crash. It cannot be disputed that the rudder control of the aircraft was part of its control system. Nor can it be disputed that the addition of a bolted-on device permitting operation of the rudder by hand as well as by foot was an alteration of this portion of the controls. By definition, that made it a major alteration.

Perhaps the alteration was innocuous to normal operation of the aircraft, perhaps essential and beneficial to its operation by a paraplegic pilot. None of this is to the point. The alteration, being major under the FAR's definition, invalidated the craft's airworthiness certificate until such time as the craft was approved to return to service by the FAA. Before this occurred, it was destroyed. Like the invalid medical certificate in *Bowie, supra*, the invalid airworthiness certificate here suspended insurance coverage. As we said in an analogous case governed by Florida law:

> "An aircraft insurance policy may validly condition liability coverage on compliance with a governmental regulation and, while non-compliance with such a regulation continues, the insurance is suspended as if it had never been in force. There need be no causal connection between the non-compliance and the loss or injury." *Glades Flying Club v. Americas Aviation & Marine Insurance Co.*, Fla. App.1970, 235 So.2d 18, 20.

*Hollywood Flying Service, Inc. v. Compass Insurance Co.*, 597 F.2d 507, 508 (5th Cir. 1979). The same holds true here. There was no issue of fact for the jury, only one of law for the court. The insurance was not in effect at the time of this loss, and the appellant underwriters must prevail.

The judgments below on the plaintiff's claim and the defendants' and third-party plaintiffs' counterclaim are reversed and

the cause is remanded to the district court for further proceedings consistent with our opinion.

REVERSED and REMANDED.