**COMPASS INSURANCE COMPANY and Heggeman Realty Company, Inc., Plaintiffs-Appellants,**

v.

**VANGUARD INSURANCE COMPANY, Defendant-Appellee.**

No. 80–3026.

United States Court of Appeals,
Fifth Circuit.
Unit A

June 30, 1981.

Scott R. Wheaton, Jr., New Orleans, La., for plaintiffs-appellants.

Phelps, Dunbar, Marks, Claverie & Sims, Howard Daigle, Jr., New Orleans, La., for defendant-appellee.

Before GEE, TATE and WILLIAMS, Circuit Judges.

GEE, Circuit Judge:

We are called upon in this diversity case to review a summary judgment for a hangar owner's insurance company on a claim by an airplane owner and its insurance company for recovery under the hangar owner's policy for loss of the airplane.

Heggeman Realty Company delivered a Cessna seaplane to Robertson Aircraft Corporation to be outfitted with certain equipment. One of Robertson's pilots was David Billings, who was not certified by the FAA but who represented to Robertson by means of forged documents that he was a certified pilot. Billings flew the plane on what ostensibly was a final test flight but what in fact was a fishing expedition to Chandeleur Island with his wife, another Robertson employee, and the latter's wife. While the plane was in the water off the island and the excursionists were fishing from it, it partially sank and sustained damage serious enough for it to be deemed a total loss.

As a result of this incident, Heggeman collected $75,408 from its insurer, Compass Insurance Company, but was not compensated for an additional $10,908 of its loss. Compass and Heggeman then sued Robertson for damages to the plane and received judgments of $35,408 and $10,908 respectively. Robertson, however, was insolvent, and Compass and Heggeman thus brought the present direct action against Robertson's insurer, Vanguard Insurance Company.

Robertson's policy with Vanguard provided two types of coverage that are relevant here: "M1" or "not-in-flight" coverage and "M8" or "in-flight" coverage. M1/not-in-flight coverage extended to:

Loss to an aircraft while not in flight excluding (1) taxiing for the purpose of an intended flight or while taxiing after landing and (2) fire or explosion following flight or taxiing (as described in (1) immediately preceding) of the aircraft out of which a collision occurs with any object.

M8/in-flight coverage reached:

Loss to an aircraft while in flight or while taxiing for the purposes of an in-

tended flight or while taxiing after landing, including fire or explosion following flight or taxiing, as covered hereunder, of the aircraft out of which a collision occurs with any object.

The policy also contained the following three definitions:

"In flight" means the period from the time the aircraft moves forward in taking off or in attempting to take off for air transit, while in the air, and until the aircraft completes its landing and landing run after contact with the land or water. A rotorcraft shall be deemed to be "in flight" when the rotors are in motion as a result of engine power, the momentum generated therefrom or autorotation.

"Taxiing" means while the aircraft is moving under its own power or momentum generated thereby other than while in flight as defined, but in the case of water alighting aircraft, "taxiing" shall be deemed to mean while the aircraft is afloat and not "in flight" or "moored."

"Moored" means while the water alighting aircraft is afloat and made fast to its moorings, or is being launched or hauled up.

Finally, the policy provided that M8/in-flight coverage did not apply when the plane was operated by a pilot not certified by the FAA. The manner by which the policy so provided, which turns out to be of some relevance, was as follows:

### EXCLUSIONS

This insurance does not apply:

. . . .

(h) Under coverage M–8

. . . .

(2) To aircraft operated by other than the pilot or pilots set forth in Item 4 of the Schedule.

### SCHEDULE

. . . .

Item 4. With respect to Coverage M–8, when the aircraft is operated while taxiing or while in flight, insurance will be effective only if said operation is by a pilot designated below or by endorsement attached to this policy who is possessed of a current and valid pilot certificate of the kind specified with appropriate ratings and a current medical certificate, all as required by the Federal Aviation Agency for the flight involved and who meets the additional requirements specified: See Endorsement No. 3.

### ENDORSEMENT NO. 3

It is hereby agreed that Item 4 of Hangarkeeper's Legal Liability insurance coverage part HK 145 is completed to read as follows:

A. With respect to single engine aircraft

Any private or commercial pilot properly certified by the FAA having a minimum of 1,000 legal solo flying hours or pilot in command hours.

The district court found that the plane was "taxiing" at the time the loss occurred and thus that the M–8/in-flight coverage provision of the policy governed. Also, the court found that since Billings was not certified by the FAA, the loss fell within the above exclusion from M–8/in-flight coverage. Concluding that there were no disputed issues of material fact and that the loss was not covered by the Vanguard policy, the court granted Vanguard summary judgment. Compass and Heggeman contend on appeal, first, that the court erred in finding that the plane was "taxiing" when the loss occurred so that M–8 rather than M–1 coverage was apposite and, second, that, even if the former provision governed, the court erred in finding that the pilot qualification clauses barred plaintiffs' recovery thereunder. Unable to agree with these contentions, we affirm.

*M–1/Not-in-Flight v. M–8/In-Flight Coverage*

■ Plaintiffs' first argument is that a material question of fact exists regarding whether the plane was taxiing when the loss occurred, that available facts suggest that the plane was not taxiing, and that the district court thus should not have entered

a summary judgment predicated on the plane having been taxiing. Plaintiffs offer the following scenario of what transpired while the plane was off the island: the Robertson employees noticed that the plane's floats were taking on water and moved the plane to shallow water. The plane then sank in about two feet of water. The employees attempted to pull the plane ashore with a boat but were unsuccessful. Over the next several days, efforts were made to salvage the plane, but these efforts, or the amount of time they required, caused more damage to the plane.

On the basis of these facts, plaintiffs aver that since, after the plane sank in shallow water, it was no longer "afloat" and since at least some of the damage to the plane happened after it sank, the plane was not taxiing, as defined in the policy, when at least some of the loss occurred. Plaintiffs also argue that the plane was not taxiing because the Robertson employees' towing of the plane and the subsequent salvage efforts constituted "hauling up" and thus "mooring," which the policy excluded from the definition of taxiing.

While we agree that the facts plaintiffs present here may raise a question of fact regarding whether the plane was taxiing, we do not find that the district court's summary judgment was therefore improper, since plaintiffs did not present these facts to that court. Under Fed.R.Civ.P. 56(e):

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him.

The only relevant facts plaintiffs produced, which were contained in a one-page affidavit, were that the plane was "floating on

the water at the time of the sinking" and "the employees were fishing from the plane at the time of the sinking." Plaintiffs' brief in opposition to the motion for summary judgment, moreover, simply asserted that "[i]t is uncontradicted that the loss occurred while the airplane was afloat in the Gulf with various people fishing off the floats."[1] Since the facts plaintiffs placed before the court indicated unequivocally that the plane was "afloat" and raised no suggestion that it was either "in flight" or "moored," the court could not help but conclude for purposes of the summary judgment motion that the plane was taxiing as defined in the policy. See Frank C. Bailey Enterprises, Inc. v. Cargill, Inc., 582 F.2d 333 (5th Cir. 1978) (per curiam); DeBardelben v. Cummings, 453 F.2d 320, 324 (5th Cir. 1972) ("[A]ny genuine material issue of fact must somehow be shown to exist in the District Court. Where the moving papers do not reveal the presence of a factual controversy on a material issue, the adversary cannot simply assent by silence to the factual theory presented in the motion— and on which the parties stand in the Trial Court—and then assert thereafter on appeal as grounds for reversal a purported factual disagreement never before revealed.").

Plaintiffs also offer the following argument: Even if the plane was taxiing, not-in-flight coverage excluded (and in-flight coverage included) only "taxiing for the purpose of an intended flight" and "taxiing after landing." The phrase "taxiing (as described in (1) immediately preceding)," which appears in clause (2) of the not-in-flight coverage provision, makes clear that the circumstances in which taxiing is excluded are restricted to those two. Here, if the plane was taxiing, it was "taxiing while people were fishing from it," not "taxiing after landing," and therefore was not excluded from not-in-flight coverage.

Although superficially plausible, this argument is not acceptable. Since taxiing was defined in the policy, insofar as is rele-

---

1. Even in their complaint plaintiffs averred only that the plane "was caused to [sink] while located on the navigable waters of the Gulf of Mexico."

vant here, to mean "afloat," the provision to which plaintiffs point excluded from in-flight coverage seaplanes that were "afloat after landing," and the plane in this case was clearly, by the stipulation if not in fact, afloat in the Gulf of Mexico after having landed there. Plaintiffs apparently would have us read the phrase "after landing" as though it were "in connection with landing." The policy, however, uses the former words and not the latter, and it is the words of the policy that bind us. The literal reading of the policy, moreover, is a sensible one. Because of the additional risks to a plane at rest on water as opposed to one at rest on land, it is understandable that an insurance policy would treat a plane afloat as if it were aflight. A major difference between in-flight and not-in-flight coverage under the instant policy, for example, is that the former requires the plane to be attended by a certified pilot, while the latter does not, and the risks of loss to a plane afloat may well be greater if the plane is not so attended.

*Recovery Under M–8/In-Flight Coverage*

█ Plaintiffs further contend that, even if the loss of the plane was subject only to M–8 coverage and even though Billings was not a certified pilot, the policy provisions denying M–8 coverage when a noncertified pilot operates the plane do not in fact bar plaintiffs' recovery because these provisions constituted a representation rather than an exclusion, and under La.Rev.Stat.Ann. § 22:619(A), which applies to the policy at issue here, "no oral or written misrepresentation or warranty made in the negotiation of an insurance contract, by the insured or in his behalf, shall be deemed material or defeat or avoid the contract or prevent it attaching, unless the misrepresentation or warranty is made with the intent to deceive." Since, according to plaintiffs, Robertson reasonably believed that Billings was certified and thus did not intend to deceive Vanguard by representing that only certified pilots would fly the plane, plaintiffs are entitled to recover under the policy. In advancing this argument, plaintiffs rely on *Benton Casing Service, Inc. v. Avemco Insurance Co.*, 379 So.2d 225 (La.1979) (on

rehearing, reversing prior decision from which Tate, J., dissented). That reliance, however, is misplaced.

In *Benton* the court construed as a representation rather than an exclusion a provision entitled "Approved Pilot Endorsement," which stated that the policy applied only when Benton's plane, if in flight, was operated by a certified pilot whose name appeared on the endorsement. Three principal factors influenced the court. First, the provision appeared in the "Declarations" section of the policy rather than in the "Exclusions" section, and none of the exclusions specifically referred to it. Second, if the endorsement were considered an exclusion, it would have rendered the policy ambiguous because it was not on its face limited to particular types of coverage and thus would have contradicted the policy's coverage of loss when the plane was flown by a thief. And third, Benton's plane was in fact flown by a certified pilot but one whose name had not been listed on the endorsement, and the insurance company routinely allowed Benton to add certified pilots to those listed on the endorsement by simply informing the company (and possibly paying a higher premium).

None of these three circumstances from *Benton* are present here. First, the pilot qualification provisions here were expressly incorporated in the exclusions section of the policy. Second, the provisions apply only to M–8 coverage and do not generate ambiguity in the rest of the policy. And finally, Billings was not a certified pilot.

Thus, we conclude that the district court was correct in regarding the pilot qualification provisions in the policy as an exclusion, as they purported to be, and in holding that plaintiffs are therefore not entitled to recover under the policy's in-flight coverage. *See Ideal Mutual Insurance Co. v. C. D. I. Construction, Inc.*, 640 F.2d 654 (5th Cir. 1981); *see generally Bill Hames Shows, Inc. v. J. J. Taylor Syndicate # 173*, 642 F.2d 179 (5th Cir. 1981). Since we have also concluded that the district court correctly decided that plaintiffs are precluded from

recovery under the not-in-flight section of the policy, that court's entry of judgment in favor of the defendant insurer is AF-FIRMED.