FIREMAN'S FUND INSURANCE COMPANY, Plaintiff,

v.

Mrs. Dorothy F. McDANIEL, Administratrix of The Estate of T. H. McDaniel, T. H. McDaniel & Company, Mrs. Annette Moody, and Mrs. Mildred Ostrowski, Defendants.

No. E-C-1-60.

United States District Court
N. D. Mississippi, E. D.

Sept. 29, 1960.

W. D. Patterson, Dallas, Tex., W. P. Mitchell, Tupelo, Miss., for plaintiff.

Dudley R. Carr, Tupelo, Miss., for defendant, Mrs. Dorothy F. McDaniel.

Mitchell & McNutt, Tupelo, Miss., for defendant, T. H. McDaniel & Co.

Burch, Porter, Johnson & Brown, Memphis, Tenn., for defendants, Mrs. Annette Moody and Mrs. Mildred Ostrowski.

CLAYTON, District Judge.

This is a suit by Fireman's Fund Insurance Company seeking a declaratory judgment of non-liability on an aircraft liability policy of insurance issued by it, with counterclaims seeking declaratory judgments of full liability made by all of the defendants. The defendants are the administratrix of T. H. McDaniel, T. H. McDaniel Company, Incorporated, the administratrix and the heirs at law of Boyce A. Moody and the heirs at law of Chester Ostrowski. T. H. McDaniel, Boyce A. Moody and Chester Ostrowski were killed in the crash of a Piper Apache airplane on September 13, 1959, when said plane was being piloted by T. H. McDaniel. Moody and Ostrowski were passengers. Claims have been made against the McDaniel estate for the deaths of Moody and Ostrowski, and the McDaniel estate claims the protection of said policy.

1) Plaintiff's claim of non-liability is based upon one of the several "Exclusions" contained in the printed form of its said policy, the pertinent portion of which reads as follows:

"This policy does not apply:

\*        \*        \*        \*        \*

"(e) to any insured who operates or permits the operation of the aircraft:—(1)  \*  \*  \*  in violation of the terms of any Civil Aeronautics Administration Pilots Certificate \*  \*  \*"

Simply stated plaintiff's claim is that McDaniel held only a "Student Pilot Certificate" which did not authorize him to fly any multi-engine airplane and which prohibited him from flying any airplane with passengers aboard. The plane in question was a two engine plane. And, if in fact a pilot with only a Student Pilot Certificate endorsed by an instructor pilot authorizing the holder to fly only a single engine plane, flew a multi-engine airplane for any purpose he would be in violation of the terms of such certificate. If he flew any plane with a passenger or passengers aboard he would also be in violation of the terms of a "Student Pilot Certificate".

2) The policy in question named "T. H. McDaniels D/B/A T. H. McDaniels & Company" as insured and in it, immediately following a description of the Piper Apache airplane, there appears as a part of the printed form the following:

"Item 5. The aircraft will be operated only by the following pilot(s) when in flight:" There then appears a printed box containing five lines, divided into four columns. Over these columns from left to right are these printed headings: "Name", "Certificate Number", "Class" and "Type". Obviously this form was intended for listing pilots by name, certificate number, class of certificate and

rating. Instead of there being any such listings there is typewritten in this space the following:

"*T. H. McDaniels* or any currently certified commercial pilot having a minimum of 500 logged solo flying hours including at least 50 hours as first pilot of multi-engine aircraft." (Emphasis added.)

3) It is urged by all defendants 1) that the typewritten insertion aforementioned, by its language, constitutes a waiver of the printed exclusion relied on by plaintiff, and 2) that the policy was issued with the knowledge of the lack of certification and rating as a pilot on the part of McDaniel, thus waiving such requirements. Additionally it is urged by Mrs. McDaniel and the McDaniel Company that even though it might be found that McDaniel was piloting the aircraft in violation of Civil Aeronautics Regulations with respect to his pilots certificate and rating, no causal connection is shown between such action, if any, on his part and the fatal crash of the aircraft in question, and hence the exclusion relied on by plaintiff is inapplicable.

4) In view of the conflicting views as to the meaning of the language of the policy, all the circumstances surrounding its issuance are in evidence.

5) About two months before McDaniel purchased his first airplane, Fyfe, an agent of Crump Underwriters, brokers for plaintiff, interviewed McDaniel at the airport in Tupelo, Mississippi, in an effort to sell McDaniel insurance coverage on his fleet of trucks. Fyfe was generally concerned with the sale of truck insurance and aircraft insurance. During this interview, in casual conversation, Fyfe testified that McDaniel claimed to have a Private Pilots Certificate and to have flown as a pilot several thousand hours, with most of it in the service. He also testified that McDaniel also claimed substantial experience as a pilot of two and four engine aircraft.

6) McDaniel bought his first airplane about April 1, 1959. This was a Cessna 175 having a single engine. Fyfe sold to McDaniel an aircraft liability policy of insurance for this airplane, which was issued by plaintiff, Fireman's Fund, and dated April 1, 1959. This policy was written on substantially the same printed form as that used in issuing the policy in question here. Operation was authorized, within the terms of this policy, by "any currently certificated private or commercial pilot having a minimum of 1000 logged solo flying hours".

7) On April 7, 1959, a Student Pilot Certificate was issued to McDaniel with an expiration date of April 30, 1961. On the face of this certificate, McDaniel was authorized to solo a Cessna 175 and to make solo cross country flights therein, but passenger carrying was prohibited.

8) McDaniel flew the Cessna 175 personally, often with passengers. This was in violation of the authorization contained in his Student Pilot Certificate and, apparently, of the terms of the aforementioned policy of insurance issued with respect to said airplane.

9) About the 19th or 20th of August, 1959, McDaniel traded the Cessna in on the aforementioned Piper Apache. Fyfe and McDaniel negotiated for the policy in question at the airport in Memphis, Tennessee, where said airplane transaction was being completed. Three witnesses who were present during all or part of these insurance negotiations testified in substantial agreement that the coverage in question was bound orally by Fyfe who stated that it was then in effect, even when McDaniel flew the airplane with passengers aboard. They were also in substantial agreement that Fyfe knew McDaniel was not rated to fly a two engine aircraft, and two of them said that Fyfe specifically waived this requirement. At least one of these witnesses flew back to Tupelo, Mississippi, that day in a two engine Piper Apache airplane, furnished by the airplane dealer. This airplane was piloted on that flight by McDaniel, but there was a properly rated instructor pilot riding with him. Fyfe's testimony was not in direct contradiction of the testi-

mony of said witnesses in any material aspect, although he felt that the pilot rating requirements were lowered for McDaniel only for the purpose of permitting him to fly his own plane with a properly rated instructor pilot aboard until he could fully qualify, rather than for him to be required to fly some other airplane for that purpose. He was confident that McDaniel so understood the arrangements.

10) A written Confirmation of Binder was issued by plaintiff, directed to Fyfe, showing that coverage was in effect as of August 20, on the McDaniel two engine airplane as a result of the negotiations between Fyfe and McDaniel, but this document showed that the airplane was to be operated in flight only by "any currently certificated commercial pilot having a minimum of 1,000 logged solo flying hours including at least 100 hours as first pilot of a multi-engine aircraft". Upon receipt of this document, Fyfe requested plaintiff by letter to issue the policy, but change pilot requirements to read:

"T. H. McDaniels and any currently certificated commercial pilot having a minimum of 500 logged solo flying hours and a multi-engine rating."

The policy was issued as requested but was not delivered until after the fatal crash of the covered airplane. An additional premium was charged by plaintiff, apparently because of the increased risk occasioned by lowering these pilot requirements. The policy was countersigned in Memphis but was not countersigned by a licensed Mississippi agent as is required by Mississippi law for a Mississippi insurance policy. The address of McDaniel was correctly shown in the policy as Shannon, Mississippi, and the policy was delivered by mail to Mississippi.

11) A log book for McDaniel was introduced, showing, at most, a total for him of 232.30 flying hours, all in single engine aircraft. The instructor who signed the McDaniel Student Pilot Certificate (who was not rated as a multi-engine instructor) testified that, so far as he knew, McDaniel had no other certificate. This Student Pilot Certificate was found in McDaniel's personal effects after his death. No other evidence is before this court with respect to the certification or rating of McDaniel on September 13, 1959.

12) Printed form applications for such aircraft insurance were furnished to Crump Underwriters by plaintiff and by at least one other company. Such applications were not used in the issuance of either of the aforementioned McDaniel policies. So far as is shown, Fyfe never asked McDaniel to show him his pilots certificate at any time, but apparently relied principally on McDaniel's gratuitous statement made at the Tupelo Airport under circumstances heretofore mentioned.

13) It is also in evidence that other insurance companies write aircraft liability policies with pilot requirements lower than those contended for by plaintiff here, and that, in fact, Crump Underwriters, brokers or agents for plaintiff, can and do write such insurance in another company. It also appears that it is customary for the broker or agent to select the company with whom the insurance will be written, or by whom the policy will be issued, and that McDaniel left the selection of the writing or issuing company to Fyfe.

14) Aircraft liability insurance is not a regulated part of the insurance field. Hence, if it chose to do so, nothing would prevent an insurance company from writing a policy which would afford coverage on any pilot, while he was flying any type airplane, with or without passengers aboard, without regard to the certification, rating or flying experience of the pilot. Similarly, such a company could impose more stringent contractual requirements on a covered pilot than those imposed on that same pilot by Civil Aeronautics Regulations, under his certification and rating.

15) No intimation is before this court as to the cause of the airplane crash on September 13, 1959. It is shown only

that there was such a crash and that the aforesaid deaths resulted therefrom. Therefore, no causal connection is shown between the certification and rating of McDaniel as a pilot (whatever it was on the date of the crash) and the crash itself.

16) It is an almost universal rule of documentary construction that where a document is prepared on a printed form and part of the document in its final form is typewritten, then the typewritten portion of the document takes precedence over the printed portion in arriving at the meaning of the document. This is the rule of construction applied to insurance contracts by the courts of Tennessee and the courts of Mississippi. Williams v. Reserve Life Ins. Co., 223 Miss. 698, 78 So.2d 794; Broyles v. Scottish Union & National Ins. Co., 16 Tenn. App. 331, 64 S.W.2d 517. Applying this general rule to the insurance policy in question here, it is clear that the typewritten insertion under the aforementioned "Item 5" must take precedence over the printed exclusion relied on by plaintiff, if there is any conflict between the two. At the least, McDaniel was a pilot. He probably did not have a higher category as a pilot than that of certification as a student pilot rated to fly only a single engine airplane. But, the typewritten portion named him as a person authorized to operate this aircraft in flight, without regard to his certification or rating as a pilot. Other pilots, by category or class, based upon certification, rating and experience were also authorized to operate this airplane in flight, under the language of the typewritten insertion. The plain meaning of this typewritten language is that McDaniel could pilot the aircraft in flight, with or without passengers aboard, and the coverage would be in effect, whether he was certificated or rated as a pilot by the Civil Aeronautics Administration (now Federal Aviation Agency) or not. Under this view, there is no real conflict between the language of the printed form of the policy and the typewritten insertion therein. Since McDaniel was authorized to fly the airplane, whether he had a certification or rating of any kind or not, the fact that he did have a certificate and rating, and even that he was in violation of Civil Aeronautics Regulations, with respect, if at all, to this certificate could not vitiate the coverage afforded by the policy, since this would be to say that the coverage was excluded for a violation of authority conferred on him by a certificate, *when he was not required to have a certificate at all.* To hold otherwise would be to permit the plaintiff insurance company to "blow hot and cold" in one breath, or, to give coverage in one part of the policy and take it away in another. See Petro v. Ohio Casualty Ins. Co., D.C.S.D.Cal. 1950, 95 F.Supp. 59, which has some persuasive value. This conclusion is strengthened by the application of another rule which, as it appears, is followed by a majority of the courts. That rule is that insurance policies will be interpreted to effect the broad purpose of coverage when this can be done without doing violence to the language of the policy. Paddleford v. Fidelity & Casualty Co. of New York, 7 Cir., 1938, 100 F.2d 606, certiorari denied 306 U.S. 664, 59 S.Ct. 789, 83 L.Ed. 1060.

17) This is a Mississippi contract. Although negotiations for it were conducted in Tennessee and it was countersigned there, it was delivered by mail to Mississippi and was for coverage of a Mississippi airplane and a Mississippi owner. The premium thereon was paid by a check mailed from Mississippi to Memphis, Tennessee. This being so, and no causal connection being shown between certification and rating of McDaniel as a pilot on September 13, 1959, (whatever that certification and rating was) and the crash itself, the exclusion relied on by plaintiff may not be invoked to void the coverage afforded by the policy. Hossley v. Union Indemnity Co. of New York, 137 Miss. 537, 102 So. 561.

18) It is not necessary to decide any other tendered issue, since the foregoing views are decisive of the case. The re-

lief prayed for in the complaint is denied and the relief prayed for in the counterclaims will be and is granted.

Orders may be prepared in accordance with this opinion.