**SCHEPPS GROCER SUPPLY, INC., Appellant,**

v.

**RANGER INSURANCE COMPANY, Appellee.**

No. 19007.

Court of Civil Appeals of Texas, Dallas.

Nov. 11, 1976.

Rehearing Denied Dec. 9, 1976.

Tom H. Davis, Byrd, Davis, Eisenberg & Clark, Austin, for appellant.

L. W. Anderson, Anderson, Henley, Shields, Bradford, Pritchard & Miller, Dallas, for appellee.

AKIN, Justice.

This is a suit certaining an interpretation of an aviation insurance contract. The principal question presented is whether, once an insurer asserts a policy exclusion, it is necessary to prove a causal connection between the loss suffered and the breach of the policy. The exclusionary clause in question provides for no coverage unless the named pilot has a multi-engine rating. Because we hold that no proof of causal connection is necessary, we affirm.

This controversy arose when a twin-engine aircraft owned by Schepps Grocer Supply, Inc., crashed killing the pilot, Lamar Masterson, and two other persons as well as damaging numerous houses. Ranger Insurance Company had issued its policy to Schepps on the aircraft; however, although specifically naming Masterson in the policy, it required him to have a multi-engine rating by the Federal Aviation Administration (FAA).

Ranger sued Schepps to recover $54,238.14 previously paid by it under its policy to the lienholder of Schepp's aircraft. Ranger was required to pay the lienholder, despite its contention that there was a violation of the policy by Schepps, since an endorsement to the policy provided that if there was a violation of the policy, as between the insured and the insured's carrier, the insurance company was still obligated to pay the lienholder, but had a subrogation right against the insured, Schepps. Additionally, Ranger sought a declaratory judgment that it was not obligated to defend Schepps or its pilot's estate in any action resulting from the crash.

Following a nonjury trial, the court rendered its judgment awarding Ranger $54,238.14 and declaring that Ranger need not defend actions against Schepps or its pilot's estate. The court specifically found that there was no coverage because the named pilot, Masterson, did not have an FAA mul-

ti-engine rating. Schepps appeals asserting that the pilot's failure to have a multi-engine rating had no causal connection with the crash and that his failure to have the rating was not material to Ranger's risk. In this respect, Schepps contends that Masterson was qualified to fly multi-engine aircrafts, but merely had not taken the FAA examination. Ranger contends, however, that the policy specifically provided that there was no coverage in the event the aircraft was flown by a pilot not having the required rating, even though the pilot was specifically named.

It is undisputed that Masterson had not obtained a multi-engine rating from the FAA at the time of the crash; however, three days prior to the crash, his instructor had given him a three-hour check flight in preparation for the multi-engine flight test. The instructor testified that he had recommended Masterson for the multi-engine rating and that Masterson possessed the necessary skills to pass the test. Schepps argues that only the inability to locate an FAA examiner to administer the test prior to leaving on the fatal flight prevented its pilot from obtaining the rating.

The pertinent provisions of the policy are:
7. Pilot Clause: Only the following pilot or pilots holding valid and effective pilot and medical certificates with ratings as required by the Federal Aviation Administration for the flight involved will operate the aircraft in flight: Lamar Masterson, *providing he obtains a multi-engine rating with at least twenty-five hours dual flight instruction in the insured make and model with a certified flight instructor pilot prior to solo and providing he obtains at least ten hours solo in the insured make and model prior to carrying passengers*; otherwise, commercial multi-engine and instrument-rated pilots having a minimum of fifteen hundred total logged hours including at least two hundred fifty hours in multi-engine aircraft. [Emphasis added.]
Exclusions: *This policy does not apply*:

.     .     .     .     .

(2) to any occurrence or to any loss or damage occurring while the aircraft operated in flight by *others than* the pilot or pilots set forth under item 7 of the Declarations. [Emphasis added.]

Although the policy required Masterson to have a multi-engine rating from the FAA, Ranger introduced evidence from the Federal Aviation Administration records showing that the only rating which Masterson held was that of a "student pilot." Ranger then rested its case. Schepps argues that Ranger did not sustain its burden of proof because it failed to introduce evidence of a causal connection between the breach and the loss. In this respect, Schepps contends that where the contract terms specifically name the pilot authorized to operate the aircraft covered, provided the pilot meets certain qualifications, and evidence is presented that the pilot possessed an equivalent proficiency, then the insurer has the burden to prove (1) that the named pilot did not have the required proficiency, or (2) that the breach contributed to the loss. Schepps argues that if either of these alternatives is proved by the insurer, then the breach is material to the risk and coverage should be denied, but that neither has been proved in this case.

Schepps relies on *Hall's Aero Spraying, Inc. v. Underwriters at Lloyd's*, 274 F.2d 527 (5th Cir. 1960), which applies Texas law, for the proposition that "[i]n the absence of a causal connection between the breach and the loss the breach is not a defense." *Id.* at 532. However, as we read this case, it does not support Schepps's position. In *Hall's Aero Spraying*, the insurer sought a declaratory judgment that it had no liability for damages caused by a plane crash. The action was predicated on the insured's failure to comply with the Texas Department of Agriculture's permit regulations before cropdusting, which the insurer contended was required by two contract provisions. The first provision was labeled a "warranty" and provided that the insured would comply with all state regulations. The second was labeled an "exclusion" and provided that there would be no liability when

the aircraft was used "for any unlawful purpose." The court held that the exclusion did not apply because the purpose for which the plane was used was not per se unlawful, even though there was noncompliance with certain regulations. The court also determined that the use of the word "warranty" did not necessarily give the first provision the effect of a warranty which requires strict compliance to preserve the insurer's liability. Since there was no language of forfeiture in the event of noncompliance with the warranty, the court held that the insurer was liable unless there was a causal connection between the breach and the loss. However, the court recognized that if the policy provision specifically excluded coverage in certain circumstances, then causation need not be proved. *Id.* at 529–30, 532.

Schepps also relies on *Fireman's Fund Insurance Co. v. McDaniel*, 187 F.Supp. 614 (N.D.Miss 1960), *affirmed*, 289 F.2d 926 (5th Cir. 1961). In that case, the insurer sought a declaratory judgment that it was not liable under the policy because the pilot was operating a multi-engine aircraft and carrying passengers in violation of his student pilot certificate. The policy contained an exclusion stating that it does not apply if the aircraft is operated by a pilot in violation of his certificate. The court denied the insurer's claim and granted a counterclaim establishing full liability under the policy. Although the facts are similar to those in our case, the policy provisions are different and, consequently, require a different result. In *McDaniel*, there was, as here, a printed exclusion clause and a typewritten list of pilots authorized to operate the aircraft. That clause stated: "*T. H.McDaniel* or any currently certified commercial pilot." *Id.* at 616. The court construed this language to afford coverage when McDaniel was the pilot regardless of whether he was licensed to pilot multi-engine aircraft or not and reasoned that, under this language, the insurer had contracted to cover all risks of loss occurring when McDaniel was the pilot. Although McDaniel had but a student pilot's license and was flying a multi-engine aircraft with passengers aboard, in violation

of his license, the court held that there was coverage even though an exclusionary clause provided that the policy would not apply "to any insured who operates . . . the aircraft . . . in violation of the terms of any Civil Aeronautics Administration Pilots Certificate." *Id.* at 615. Finding that the two provisions when read together rendered the policy ambiguous, the district court applied the rule of contract construction that if there is a conflict between a typewritten and a printed clause, the former controls. Although the court briefly discusses the causal connection theory, the decision is based upon rules of contract construction applicable when provisions are in conflict. Since liability was not excluded under the policy and since no causation was shown, the court held the insurer liable.

The insurance contract in our case is distinguishable in several important aspects. First, the exclusion clause in *McDaniel* conflicted with the pilot clause; no conflict exists between these provisions in our case. Secondly, Masterson is a listed pilot only if he receives his multi-engine rating; no such qualification was present in *McDaniel*. Additionally, the Fifth Circuit, in affirming the case, specifically declined to pass on this alternative holding of the district court that the absence of proof of causal connection would prevent the exclusions from being used to avoid coverage. Consequently, we do not view the holding of the district court in *McDaniel* to be authoritative or supportive of Schepps' causal connection theory. As we read the pertinent provisions of the policy in our case, Masterson is a named pilot only if he receives his multi-engine rating. Since Masterson did not have the rating required by the pilot clause, the exclusionary clause applies because it was an "occurrence or loss occurring while the aircraft was operated in flight by *others than* the pilot or pilots set forth under item 7 of the declaration." [Emphasis added.]

Had the parties intended to contract that Masterson need only have the proficiency equivalent to that required for an FAA multi-engine rating, they could easily have

done so by choosing different language. Since they chose not to do so, Ranger is entitled to require that Masterson meet the qualifications in the policy before liability attaches. This is the only reasonable reading of the policy. Contrary to the contention of Schepps, the question of a causal relation between Masterson's failure to adhere to the pilot requirements and the loss is totally immaterial under this language. *Omaha Sky Divers Parachute Club, Inc. v. Ranger Insurance Co.*, 189 Neb. 610, 204 N.W.2d 162, 164 (1973). To construe these policy provisions as Schepps would have us do would be to ignore the clause "providing he obtains a multi-engine rating," and, in effect, would make a new contract between the parties. We conclude, therefore, that Schepps' contention is without merit.

Judgment affirmed.