783 F.2d 1234
 IDEAL MUTUAL INSURANCE CO., Plaintiff-Appellee, Cross-Appellant,
v.
LAST DAYS EVANGELICAL ASSOCIATION, INC. and Junk Air, Inc.
and William David Jenkins d/b/a Junk Air Co.,
Defendants-Appellants, Cross-Appellee.
 No. 84-1569.
 United States Court of Appeals,
Fifth Circuit.
 March 3, 1986.
 
 Bonnie Beavers, Stephen A. Coke, Larry R. Boyd, Darrell Panethiere, Dallas, Tex., for Last Days Evangelical Ass'n, Inc.
 C. Steven Bradford, Jenkens & Gilchrist, Don C. Bush, Dallas, Tex., for Junk Air, Inc. et al.
 Charles H. Smith, Shank, Irwin, Conant & Williamson, J. Michael Colpoys, Dallas, Tex., Lord, Bissell & Brook, Wallace E. Maloney, Chicago, Ill., for Ideal Mut. Ins. Co.
 Appeals from the United States District Court for the Northern District of Texas.
 Before GOLDBERG, JOLLY and HIGGINBOTHAM, Circuit Judges.
 GOLDBERG, Circuit Judge:
 
 
 1
 The evidence in the record does not disclose whether any augurers counselled otherwise when Last Days Evangelical Association decided to lease a Cessna 414 from William Jenkins' Junk Air.[1] Nor does the record disclose whether the Fates chuckled vindictively when Ideal Mutual Insurance Company insured the airplane. Be that as it may, the relationship between Junk Air and Last Days ended tragically on the afternoon of July 28, 1982, when the airplane crashed in the vicinity of Lindale, Texas, killing the pilot, Don Burmeister, and his eleven passengers.
 
 
 2
 Last Days promptly filed a claim under the insurance policy. Soon thereafter, Ideal filed a declaratory judgment action against Last Days, Junk Air, and William Jenkins, and pleaded that several exclusionary clauses in the policy precluded coverage. Ideal alleged that coverage did not exist under the policy for the following reasons: (1) the aircraft was overloaded at the time of the crash and was operated in a manner requiring Federal Aviation Administration authorization by special permit or waiver; and (2) Burmeister did not meet the requirements of the pilot clause endorsement, in that he did not have 1,045 logged hours and had not attended the manufacturer's flight training school. Pursuant to the policy's Lienholder's Interest Endorsement, Ideal also sought to recover from Jenkins the balance of principal and interest due on a promissory note and reasonable attorneys' fees incurred in bringing suit on the note.
 
 
 3
 Rejecting all but one of Ideal's arguments, the district court found that coverage did not exist because appellants failed to prove that Burmeister had the 1,045 "total logged hours" required by the policy. The district court also held Jenkins liable on the note, found that Jenkins was Last Days' agent for the purpose of procuring insurance, and awarded Ideal $5,000 in attorneys' fees against Jenkins.
 
 
 4
 Since the Texas Supreme Court's decision in Puckett v. United States Fire Insurance Co., 678 S.W.2d 936 (1984), which was handed down shortly after the district court's decision, a finding of no coverage must be accompanied by a finding that the breach of the policy contributed to the loss. Although we find no error in the district court's finding that appellants breached the policy, we must nonetheless reverse the judgment below and remand to allow appellants an opportunity to prove that the breach of the policy did not contribute to the loss.
 
 FACTUAL BACKGROUND
 
 5
 Ideal is a New York corporation with its principal place of business in the State of New York. Last Days is a California corporation with its principal place of business in the State of Texas. Junk Air is a California corporation with its principal place of business in the State of California. William David Jenkins is an individual resident of the State of California; Jenkins does business as Junk Air.
 
 
 6
 Jenkins leased the ill-fated Cessna 414 to Last Days in February, 1982. Under the terms of the lease, Jenkins agreed to provide hull and liability insurance on the plane with both Jenkins and Last Days named as insureds.[2] Jenkins contacted Aviation Assurance Agency by Dickens ("Assurance"), an insurance broker. On February 22, 1982, Assurance issued to Jenkins and Last Days an insurance binder on the plane through Global Aviation Insurance Managers, Inc. with an effective period of one year, beginning on February 24, 1982. On March 23, 1982, Ideal issued its own binder through Global Aviation. At the time of the crash, all premiums had been fully paid. This insurance policy contains the conditions and terms of coverage at issue in this suit.
 
 
 7
 Exclusion No. 2 of the policy provides as follows:
 
 This Policy does not apply:
 
 8
 * * *
 
 
 9
 * * *
 
 
 10
 2. to any occurrence or to any loss or damage occurring while the aircraft is operated in flight by other than the pilot or pilots set forth under Item 7 of the Declaration [which provides]:
 
 
 11
 PILOT CLAUSE. Only the following pilot or pilots holding valid and effective pilot and medical certificates with ratings as required by the Federal Aviation Administration for the flight involved will operate the aircraft in flight:
 
 
 12
 SEE ENDORSEMENT # 1 [which provides:]
 
 
 13
 IT IS HEREBY UNDERSTOOD AND AGREED THAT ITEM 7 OF THE POLICY DECLARATIONS SHALL BE COMPLETED TO READ AS FOLLOWS:
 
 
 14
 TOM KRAUS HAVING A COMMERCIAL PILOT CERTIFICATE WITH A MULTI ENGINE LAND AND INSTRUMENT RATING AND HAVING A MINIMUM OF 950 TOTAL LOGGED FLYING HOURS OF WHICH NOT LESS THAN 10 HOURS SHALL HAVE BEEN IN MULTI ENGINE AIRCRAFT INCLUDING NOT LESS THAN 10 HOURS IN THE SAME MAKE AND MODEL AIRCRAFT INSURED BY THIS POLICY.
 
 
 15
 DON BURMESER [SIC] HAVING A COMMERCIAL PILOT CERTIFICATE WITH A MULTI ENGINE LAND AND INSTRUMENT RATING AND HAVING A MINIMUM OF 1045 TOTAL LOGGED FLYING HOURS OF WHICH NOT LESS THAN 50 HOURS SHALL HAVE BEEN IN MULTI ENGINE AIRCRAFT INCLUDING NOT LESS THAN 15 HOURS IN THE SAME MAKE AND MODEL AIRCRAFT INSURED BY THIS POLICY.
 
 
 16
 PILOTS TOM KRAUS AND DON BURMESER [SIC] MUST ATTEND THE MANUFACTURER'S GROUND AND FLIGHT SCHOOL.
 
 
 17
 ANY PERSON HAVING A PRIVATE PILOT CERTIFICATE WITH A MULTI ENGINE LAND AND INSTRUMENT RATING AND HAVING A MINIMUM OF 1500 TOTAL LOGGED FLYING HOURS OF WHICH NOT LESS THAN 500 HOURS SHALL HAVE BEEN IN MULTI ENGINE AIRCRAFT INCLUDING NOT LESS THAN 25 HOURS IN THE SAME MAKE AND MODEL AIRCRAFT INSURED BY THIS POLICY. [emphasis added].
 
 
 18
 The clause "having a minimum of 1,045 total logged flying hours" is now the sole source of controversy[3] and found its way into the policy in the following manner. John Wallace, the underwriter involved at Ideal, asked Sharon Lewalling, the employee at Assurance handling the matter for Jenkins, for each pilots' logged flying hours. The application binder completed by Assurance and sent to Jenkins to be signed required that pilot experience be listed as "Total Logged Hours." In the space provided for the specific numbers, however, "Will fill out pilot forms" was written. Lewalling had sent Burmeister a form that requested "pilot experience."
 
 
 19
 The form required that Burmeister "[l]ist each aircraft by Make and Model and Hours as Pilot-in-Command in each." It did not, however, specifically request "logged" hours; rather, it simply requested "total hours."[4] Burmeister filled out the form and returned it to Assurance. Many of the hours listed had been acquired during Burmeister's military training, and Lewalling assumed that military time was logged time. (Tr. 79). She then forwarded the form along with Assurance's binder to Wallace at Ideal, who incorporated the information provided by Burmeister in Endorsement # 1. (Tr. 32, 54).
 
 
 20
 The district court found that both Lewalling and Wallace "clearly intended to include a provision in the policy that Burmeister must have 1,045 logged flying hours." Rec. at 683. However, as is clear from the pilot experience form's request for "total hours," Assurance perhaps failed to convey this intent to Burmeister. Thus did Ideal innocently transform Burmeister's statement that he had 1,045 total hours into a statement that he had 1,045 total "logged" hours.DISCUSSION
 
 
 21
 Special rules govern the construction of insurance contracts under Texas law. As a general rule, exceptions and limitations found in an insurance policy are construed against the insurer. Ranger Insurance Co. v. Bowie, 574 S.W.2d 540, 542 (Tex.1978). "When the language of a policy is susceptible of more than one reasonable construction, the courts will apply the construction which favors the insured and permits recovery." Ramsay v. Maryland American General Insurance Co., 533 S.W.2d 344, 346 (Tex.1976). "[T]he insurer may not escape liability merely because his or its interpretation should appear to us a more likely reflection of the intent of the parties than the interpretation urged by the insured. The latter has to be no more than one which is not itself unreasonable." Continental Casualty Co. v. Warren, 152 Tex. 164, 254 S.W.2d 762, 763 (1953). Of course, when the language of the policy permits only one reasonable construction and that construction favors the insurance company, recovery is denied. Puckett, supra, at 938. Moreover, we attempt to construe a contract so as to avoid rendering any of its terms meaningless. Blaylock v. American Guarantee Bank Liability Insurance Company, 632 S.W.2d 719, 722 (Tex.1982).
 
 
 22
 As necessity is the mother of invention, so is ambiguity the father of multiple reasonable constructions, and where lawyers are involved, one never lacks an eager parent of either gender. Ambiguity in a contract is a question of law, Airmark, Inc. v. Advanced Systems, Inc., 715 F.2d 229, 230 n. 1 (5th Cir.1983) (applying Texas law), and a court may look beyond the plain language of the contract for evidence of surrounding circumstances to determine whether a writing is ambiguous. Id. at 230. "When terms of an insurance policy are unambiguous, they are to be given their plain, ordinary and generally accepted meaning unless the instrument itself shows that the terms have been used in a technical or different sense." Ramsay, supra, at 346. Unlike the deconstructionists at the forefront of modern literary criticism, the courts still recognize the possibility of an unambiguous text.
 
 
 23
 Appellants argue that the endorsement's use of the phrase "having a minimum of 1,045 total logged flying hours" gives birth to two ambiguities. They claim first that the entire phrase merely describes Burmeister and does not purport to act as a condition precedent to coverage. Second, they contend that even if the phrase prescribes a condition precedent, the word "logged" should be construed to describe the general writing submitted by Burmeister on his pilot form, rather than a written record of each one of his flights. We reject both arguments and find, as did the district court, that the policy unambiguously required that Burmeister have a minimum of 1,045 hours of logged time as a condition precedent to coverage.
 
 
 24
 The argument that the phrase beginning with "having" is not a condition precedent to coverage rests on Ideal's alleged failure explicitly to make it such. Had this been Ideal's desire, so goes the argument, Ideal could have written "provided he has a minimum of 1,045 hours of total logged time." See, e.g., Ideal Mutual Insurance Co. v. C.D.I. Construction, Inc., 640 F.2d 654, 657 (5th Cir.1981); Schepps Grocer Supply, Inc. v. Ranger Insurance Co., 545 S.W.2d 13, 14 (Tex.Civ.App.--Dallas 1976, writ ref'd n.r.e.) Appellants argue that without some such language, the reference to pilot hours is merely descriptive.
 
 
 25
 This construction of the policy urged by appellants is unreasonable because it effectively works an Amelia Earhart disappearing act on the offending phrase. While this result is from appellants' perspective advantageous, it is certainly not reasonable, as it fails to give any effect at all to the phrase. A reasonable construction is one that gives meaning to the disputed language in the context of the writing, not one that strips the language of meaning altogether.
 
 
 26
 To give effect to this language, one need not look farther than the insurance company's business need to assess a risk prior to insuring it and setting the premium. An obvious element of that risk is the experience of those who will pilot the plane, and we can safely assume that both the risk and the premium will be higher if the pilot is Wrong Way Corrigan instead of Chuck Yeager. Thus, it does not require any speculation to conclude that Ideal included Burmeister's experience as a warranty that the risk it insured initially would be the same risk it paid out on.
 
 
 27
 That this construction is the only reasonable one is evident from the policy itself. Exclusion No. 2 provides that the policy does not apply if the aircraft is operated by other than the pilots set forth in the Pilot Clause, and the Pilot Clause reemphasizes that only the pilots listed in Endorsement # 1 are allowed to operate the aircraft. Endorsement # 1 then states that one of these pilots is "Don [Burmeister] ... having a minimum of 1,045 total logged flying hours." Clearly, if Burmeister flew the plane and did not have 1,045 logged hours, the plane was being operated by other than the pilot named in the pilot clause and the policy would not apply. That is, even if we read the disputed language as a "description," then it does not correctly describe its intended referent, Burmeister, unless he in fact has the requisite logged flying hours. Thus, if the "Burmeister" described in the policy is not the real Burmeister, then it does not apply to him, and he is not a covered pilot. To read this language any other way is to read it completely out of the policy, leaving the insurer vulnerable to a risk it did not insure.[5]
 
 
 28
 Appellants also seek to squeeze some ambiguity from the use of the word "logged." They argue that "logged" merely means written down in some manner, and that Burmeister's pilot experience form, in which Burmeister listed in less than half a page the time he had spent flying over a period of many years, constitutes a "log."
 
 
 29
 "Logged," however, means more than this. In Stewart v. Vanguard Insurance Company, 603 S.W.2d 761 (Tex.1980), the Court stated that the "common-sense meaning of the term is that a record, however informal, is made of the event.... Human memory is so frail that a record needs to be made of the time, duration, point of departure, and destination of the flights...." Id. at 762.
 
 
 30
 Not all time spent in flight is logged time, nor need it be; but logged time is given greater credence, and the FAA counts only that time which is logged. In Republic Aero, Inc. v. North American Underwriters, 462 S.W.2d 635 (Tex.Civ.App.--Waco 1970, no writ), the court counted all flight time even though it was not logged and held that a pilot had met the policy requirement that he have 500 hours of total time. The court stated that if the defendant insurance company had wished to recognize for insurance purposes only those hours also recognized by the FAA for certificate or rating purposes, it could have done so by placing a provision to this effect in the policy. In this case, the insurer did include that provision in the policy. It did so by requiring that "logged" time be included in the number of hours to be counted. Republic National Life Ins. Co. v. Spillars, 368 S.W.2d 92 (Tex.1963).
 
 
 31
 Id. at 763 (emphasis added).
 
 
 32
 If there was any ambiguity concerning the type of hours requested, it arose only in Burmeister's mind when he confronted the pilot form's request for "total hours." The policy itself is unambiguous, and there is no evidence from the surrounding circumstances that any of the parties to this suit intended "logged" to have any but its ordinary meaning.[6]
 
 BURDEN OF PROOF
 
 33
 In a diversity action a federal court must apply the substantive law of the forum state, and the question of burden of proof is a matter of substantive law. Benavides v. Mutual Life Insurance Co., 516 F.2d 393, 400 (5th Cir.1975). It is a well-settled albeit harsh rule under Texas law that when an insurance company merely pleads specific exclusions set forth in the policy, the burden is on the insured to produce evidence that the exclusions do not apply. Griffith v. Continental Casualty Co., 506 F.Supp. 1332, 1335 (N.D.Tex.1981); Sherman v. Provident American Insurance Co., 421 S.W.2d 652, 654 (Tex.1967). For reasons undisclosed by the record, appellants did not produce any evidence of logged hours that would have supported Burmeister's claims on the pilot form submitted to Ideal. Appellants' failure in this regard supports the district courts' conclusion that appellants breached the policy.
 
 
 34
 Puckett v. U.S. Fire Insurance Co., 678 S.W.2d 936 (Tex.1984), however, found in public policy the requirement that the breach of the policy must be shown to contribute to the loss, as the insurance company would otherwise avoid liability by way of a breach that amounts to nothing more than a technicality. "[A]n insurer cannot avoid liability under an aviation liability policy unless [the breach] is either the sole or one of several causes of the accident." Id. at 938. Because the parties in Puckett had stipulated to causation, the Court did not address the question of which party--insurer or insured--bears the burden of proving causation.[7] The question, therefore, is an open one as it comes before us.
 
 
 35
 Although we might prefer to do otherwise, we believe that were the Texas Supreme Court to address this question, it would place the burden, as did Justice Spears concurring in Marr's Short Stop, on the insured to prove that the failure to comply with the terms of the policy in no way contributed to the loss. Our decision is informed by the well-settled rule that places the burden on the insured to negative any exclusion pleaded by the insurer.[8] Placing the burden on the insurer would be inconsistent with this rule. Not only would the insurer have to prove that the exclusion applied, but the insured would be relieved of any duty to negative the exclusion if the insurer failed to carry its burden of proof. We therefore place the burden of proving the lack of causation on the insured.[9]
 
 CONCLUSION
 
 36
 We affirm the district court's finding that appellants breached the policy. However, we reverse the district court's judgment that coverage does not exist and remand so that appellants may prove, if possible, that Burmeister's lack of the requisite number of logged hours did not contribute to the crash. In practical terms, appellants must prove that pilot error was not a cause of the crash.[10]
 
 
 37
 REVERSED AND REMANDED.
 
 
 
 [1]
 Cf., e.g., W. Shakespeare, Julius Caesar II ii. 13-26 (Riverside Shakespeare, 1974), in which Calphurnia almost convinces Caesar to pass up his appearance before the Senate the next day:
 Caesar, I never stood on ceremonies,
 Yet now they fright me. There is one within,
 Besides the things that we have heard and seen,
 Recounts most horrid sights seen by the watch.
 A lioness hath whelped in the streets,
 And graves have yawn'd and yielded up their dead;
 Fierce fiery warriors fight upon the clouds
 In ranks and squadrons and right form of war,
 Which drizzled blood upon the Capitol;
 The noise of battle hurtled in the air;
 Horses [did] neigh, and dying men did groan,
 And ghosts did shriek and squeal about the streets.
 O Caesar, these things are beyond all use,
 And I do fear them.
 
 
 [2]
 The district court found that, given this term in the lease, Jenkins was Last Days' agent for the purpose of procuring insurance. We find no error in this determination. See Fidelity and Casualty Co. v. Indiana Lumbermen's Mutual Insurance Co., 382 F.2d 839, 842 (5th Cir.1967)
 
 
 [3]
 Ideal does not challenge the district court's rejection of its argument that coverage did not exist because the airplane was flown in violation of FAA regulations or because Burmeister had not attended the manufacturer's training school
 
 
 [4]
 On the difference between total hours and logged hours, see text following note 5, infra
 
 
 [5]
 Ranger Insurance Company v. Culberson, 454 F.2d 857 (5th Cir.1971) does not compel a contrary conclusion. In Culberson we held that an exclusionary clause identical to Exclusion No. 2 here did not by its terms incorporate from the Pilot Clause anything but the pilots' name. Appellants argue here that Exclusion No. 2 similarly incorporates only the name and fails to pick up any descriptive language. Culberson, however, did not involve descriptive language in the manner or of the type employed here, and consequently it did not read any language completely out of the policy. Moreover, even if Exclusion No. 2 fails to incorporate more than the pilot's name--a proposition that we do not accept--the Pilot Clause by its own terms gives notice of the exclusion, which was not the case in Culberson
 
 
 [6]
 To the extent that the policyis predicated on a mistake, the mistake was that of appellants' agent Assurance, not that of Ideal, and cannot be used to estop Ideal from enforcing its right under the Exclusionary Clause
 
 
 [7]
 Although the two dissenters in Puckett claimed that the Court had "add[ed] to the contract the requirement that the insurance company must prove that the breach was the cause of the accident," id. at 940, Justice Spears, the author of Puckett, concurred in United States Fire Insurance Co. v. Marr's Short Stop of Texas, Inc., 680 S.W.2d 3, 6 (Tex.1984) to say that "in order to avoid an unambiguous exclusion in an insurance policy on public policy grounds, the claimant should have the burden to prove that his failure to comply with the terms of the contract in no way contributed to the loss" (emphasis added)
 
 
 [8]
 The rationale underlying this rule is explained in Hardware Dealers Mutual Insurance Co. v. Berglund, 393 S.W.2d 309, 315 (Tex.1965) (quoting Travelers' Insurance Co. v. Harris, 212 S.W. 933 (Tex.Com.App.1919)):
 Those courts which treat the contracts as being general, and the clauses declaring what they shall not cover as "stipulations added to the principal contract to avoid the promise of the insurer by way of defeasance or excuse," hold that these clauses are defensive, and must be pleaded and sustained by the insurer; while the courts which construe the exception clauses as "taking something out of the general portion of the contract, so that the promise is to perform only what remains after the part excepted is taken away," place the burden of pleading and proof upon the assured to negative them by showing that his cause of action does not come within the exception. (Here follows citation of authorities.).
 In view of the decisions by our Supreme Court, and the indication made in granting the writ in this case, we are of the opinion that the burden rests upon the plaintiff to show that her cause of actions does not fall within the excepting clause.
 
 
 [9]
 The insurer must nonetheless plead that the breach of the policy increased its risk and thereby contributed to the loss
 
 
 [10]
 We express no opinion on Ideal's claim on the note or on Ideal's request for attorneys' fees, as the resolution of these questions must await the district court's decision on remand regarding Ideal's liability under the policy