United States Court of Appeals,

Fifth Circuit.

No. 94-20479.

AMICA MUTUAL INSURANCE COMPANY, Plaintiff-Counter-Defendant, Cross-Defendant-Appellee,

v.

Donna MOAK, Individually and as Independent Executrix of The Estate of David Moak and a/n/f of Blake Moak, Et Al., Defendants,

Donna Moak, Individually and as Independent Executrix of The Estate of David Moak and a/n/f of Blake Moak, Defendant-Counter-Plaintiff, Cross-Plaintiff-Appellant,

Jayson Moak, Joel Moak, Jerome Moak, Dorothy Moffett and Blake Moak, Defendants-Appellees.

June 28, 1995.

Appeal from the United States District Court for the Southern District of Texas.

Before JONES, DUHÉ and STEWART, Circuit Judges.

EDITH H. JONES, Circuit Judge:

This case arises out of an automobile accident that killed David Moak (David). In probate court, David's estate and family members divided one million dollars in insurance proceeds deposited by the negligent driver's insurance company. At issue in this case is an additional five hundred thousand dollars in underinsured motorist proceeds deposited into the court registry by David's insurer. Interpreting the policy to cover all of David's immediate family, the magistrate judge held that principles of collateral estoppel applied and the parties were entitled to recover damages in the same proportion as in the probate court. We affirm the magistrate judge's interpretation of the policy, but reverse the

1

finding that the apportionment of damages in the probate court collaterally estops further litigation on that issue.

BACKGROUND

On May 8, 1992, David was killed when his car was struck by a truck driven by David Bohuslav while in the course and scope of his employment for Bohuslav Trucking, Inc. David was survived by his wife Donna, their son Blake, his sons from a previous marriage Jayson and Joel, and his parents Dorothy and Jerome. Each of the survivors brought a wrongful death action against Bohuslav and his trucking company in probate court.

Because Truck Insurance Exchange (TIE), Bohuslav's insurer, was unable to settle the lawsuits, it filed an interpleader action in the federal court and deposited the one million dollars in policy proceeds into the registry of the court. The claimants reached an agreement for the division of the proceeds and submitted the agreement to the probate court. The probate judge, however, rejected the proposed distribution and, after hearing evidence, suggested his own apportionment, which the parties approved and the interpleader court adopted.

In addition to the Bohuslav insurance coverage, David and Donna had purchased five hundred thousand dollars worth of uninsured/underinsured motorist coverage from Amica Mutual Insurance Company (Amica). Prior to the distribution of the Bohuslav proceeds, Amica also filed an interpleader action against all of the claimants and deposited its proceeds into the registry of the court. Aware of the additional Amica proceeds, the

2

claimants did not include any reference to the Amica proceeds in the Bohuslav settlement.[1]

In this case, all claimants brought summary judgment motions asserting their rights to the Amica proceeds. Donna contended that she, and possibly Blake,[2] were the only individuals entitled to the Amica money because the others were not "covered persons" under the policy. The other claimants argued in their motions that they were "covered persons" under the policy and that principles of collateral estoppel entitled them to recover in the same proportion as in the earlier Bohuslav case. The magistrate judge denied Donna's motion and granted summary judgment in favor of the other claimants. Donna now appeals.

## DISCUSSION

Insurance policies are contracts and are governed by the principles of interpretation applicable to contracts. *Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 665 (Tex.1987). State law rules of construction govern in diversity cases. *Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n, Inc.,* 783 F.2d 1234, 1238 (5th Cir.1986). The court's role in determining whether to grant summary judgment in a case involving the construction of an insurance policy is to determine whether there is ambiguity in the applicable terms of the policy. *Yancy v. Floyd West & Co.,* 755

[1]In fact, the record reveals that Donna's agreement to settle the Bohuslav case was contingent upon her right to demand payment from Amica.

[2]Donna and Blake entered into a stipulation prior the summary judgment motions postponing any determinations as to which of them were entitled to proceeds from the Amica policy.

S.W.2d 914, 917 (Tex.Ct.App.1988, writ denied). When the terms of an insurance policy are unambiguous, a court may not vary those terms. *Royal Indem. Co. v. Marshall,* 388 S.W.2d 176, 181 (Tex.1965). We review determinations of law de novo. We agree with the magistrate judge that the terms of the policy are not ambiguous.

The key provision of the policy reads:

INSURING AGREEMENT:

We will pay damages which a covered person is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury sustained by a covered person, or property damage, caused by an accident.

The policy also includes the following definition:

"Covered Person' as used in this part means:

1. You or any family member;[3]

2. Any other person occupying your covered auto;

3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

Blake, Jayson, Joel, Dorothy, and Jerome are "covered persons" as defined in category 3. Under the Texas wrongful death statute, they are persons entitled to recover damages because of bodily injury sustained by David, who is a person described in category

---

[3]The policy provides:

> "Family member' means a person who is a resident of your household and related to you by blood, marriage or adoption. This definition includes a ward or foster child who is a resident of your household, and also includes your spouse even when not a resident of your household during a period of separation in contemplation of divorce.

4

1.[4] Blake is also a "covered person" under category 1., because he was a resident of David's household at the time of the accident. Donna's arguments to the contrary are unconvincing.

The crux of Donna's argument is that the definition of "covered persons" is exclusionary in nature acting as a limitation on persons covered. She contends that any blood relative not included in category 1. is forever excluded and thus cannot be a "covered person" under any other category. The plain language of the policy belies such a strained reading. An individual need only be included in one of the three categories to achieve "covered person" status. Donna cites *Liberty Mut. Ins. Co. v. Am. Ins. Co.,* 556 S.W.2d 242, 244 (Tex.1977), as support for the proposition that the other claimants are excluded from coverage. However, her reliance on *Liberty* is misplaced because, unlike *Liberty,* the definition of "covered person" here at issue is not an exclusion or limitation of liability, but a recitation of those who are included under the policy. The Amica policy at issue contains within the Uninsured Motorist portion of the policy separate sections entitled "Exclusions" and "Limit of Liability," neither of which excludes or limits in any way coverage of the other claimants.

Donna next argues that no one other than David sustained a "bodily injury" because loss of consortium and mental anguish are not "bodily injuries" under Texas law. *See McGovern v. Williams,* 741 S.W.2d 373, 374-75 (Tex.1987). However, this contention is

---

[4]"An action to recover damages [for wrongful death] is for the exclusive benefit of the surviving spouse, children, and parents of the deceased." Tex.Civ.Prac. & Rem.Code § 71.004.

without consequence because the language of the policy does not require the other claimants to have suffered bodily injury. The policy only requires them to be entitled to damages because of bodily injury sustained by a person described in category 1. or 2. Since David is described in category 1. and the bodily injury to David entitles them to recover damages under Texas wrongful death law, under the policy it is irrelevant that they themselves did not sustain bodily injury.

Donna next contends that the language in the policy agreeing to transfer a named insured's interest in the policy upon death to that person's spouse evidences that only she is entitled to the proceeds. However, this provision does not mention or suggest in any way that it pertains to distribution of the proceeds. It is merely the mechanism to change the named insured upon death of an insured. This contention has no merit.

Donna also argues that category 3. applies only to providers of emergency services, i.e., doctors, hospitals, ambulances, etc. As authority, Donna cites *Government Employees Ins. Co. v. United States,* 376 F.2d 836, 837 (4th Cir.1967). This case is not inconsistent with our holding, rather it supports our view that category 3. has broad application.

Therefore, because Jayson, Joel, Donna, Jerome, and Blake are entitled to recover damages for wrongful death as a result of the bodily injury sustained by David in the accident, they are "covered

persons" under the policy.[5]  Our holding comports with the purpose

underlying uninsured/underinsured motorist protection as declared

by the Texas Supreme Court:

> By purchasing this coverage along with basic liability
> coverage, the insured has expressed an intent not only to
> protect others from his or her own negligence but also to
> protect that person's own family and guests from the
> negligence of others.

*Stracener v. United Serv. Auto Ass'n,* 777 S.W.2d 378, 384

(Tex.1989).

As each of the claimants is a "covered person" under the Amica

policy, it is yet to be resolved who gets how much of the proceeds.

Each of the claimants except Donna contends that the apportionment

proposed by the probate court and adopted by the district court in

the Bohuslav case is binding upon this case.

In determining the preclusive effect of a prior state court

judgment, federal courts must apply the law of the state from which

the judgment emerged.  *J.M. Muniz, Inc. v. Mercantile Texas Credit

Corp.,* 833 F.2d 541, 543 (5th Cir.1987).  Under Texas law, "[f]or

the doctrine [of collateral estoppel] to apply, a party must

establish that (1) the facts sought to be litigated in the second

action were fully and fairly litigated in the prior action, (2)

those facts were essential to the judgment in the first case, and

(3) the parties were cast as adversaries in the first action."  *Id.*

at 544 (citing *Bonniwell v. Beech Aircraft Corp.,* 663 S.W.2d 816,

---

[5]We place no reliance on the affidavit of Richard S. Geiger
submitted by Amica offering an interpretation of the language of
the policy and of Texas case law.  The interpretation of a
contract is a question of law for the court.  Any reliance on
this "expert" opinion by the court below was misplaced.

818 (Tex.1984)).

In the prior action, filed in the probate court against the tortfeasor Bohuslav, the claimants reached an agreed judgment dividing the proceeds of the Bohuslav policy. The probate judge rejected the apportionment and conducted an evidentiary hearing. After this hearing, the claimants agreed to a revised apportionment which was approved by the probate judge and then implemented in the insurer's interpleader action.

The magistrate judge held that this chain of events collaterally estops Donna from relitigating the amount of damages each claimant is entitled to recover under the Amica policy. We disagree. The issue to be decided in this case is how much money each claimant is entitled to collect on the Amica policy. Under the single satisfaction rule, a plaintiff is only entitled to recover the amount of damages proven. *See Stewart Title Guaranty Co. v. Sterling,* 822 S.W.2d 1, 7 (Tex.1991). Therefore, before the Amica proceeds can be distributed by the court, each claimant must establish the amount of his or her damages. This issue was not actually litigated or necessary to the agreed judgment in the prior proceeding.[6]

---

[6]To illustrate, the money interpled in the Bohuslav case was a one million dollar pie that was sliced into different size pieces and served to the claimants. However, had the pie been fifty percent larger (including the Amica proceeds), there is no indication that the pie would have been sliced in exactly the same proportion. Absent an indication in the judgment that the Bohuslav proceeds were distributed in direct proportion to the amount of damages suffered by each claimant, we cannot conclude that the issue in this case was fully litigated or necessary to the prior judgment. For example, we are unable to determine whether the $37,500 received by David's mother Dorothy under the

CONCLUSION

We AFFIRM the magistrate's judge's legal determination that Jayson, Joel, Dorothy, Jerome, and Blake are "covered persons" under the Amica policy. We REVERSE the court's holding that collateral estoppel obviates the need for each claimant to prove his or her damages and precludes further litigation on the issue of damages. Therefore, we REMAND this case for further proceedings consistent herewith.

AFFIRMED in Part, REVERSED and REMANDED in Part.

---

agreed judgment fully compensated her for her damages. If so, Dorothy would not be entitled to any further proceeds from the Amica policy.