United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 8, 2003**

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 03-40540
_____

Mary Pena,

Plaintiff/Appellant,

versus

Associates Financial Life Insurance Company,

Defendant/Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
District Court No. C-03-CV-48
_____

Before HIGGINBOTHAM, EMILIO M. GARZA and PRADO, Circuit Judges.[1]

PER CURIAM.

Mary Pena, a resident of Texas, sued Associates Financial Life Insurance Company (AFLIC)in Texas state court alleging that she was owed money on a life insurance policy (the Policy) purchased from AFLIC. AFLIC, a Tennessee corporation, removed the case to district court based on diversity of citizenship. On March 7, 2003, Pena moved for partial summary judgment and on March 12, 2003, she moved for class action certification. On

---

[1]Pursuant to 5th Cir. R. 47.5, this Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

March 27, 2003, AFLIC then filed a counter-motion for summary judgment.  On April 14, 2003 the district court filed a final order denying both of Pena's motions and granting AFLIC's motion for summary judgment.  Pena now appeals from that judgment. Finding no error, this Court will affirm.

## Factual Background

Mary Pena and her late husband, Raul Pena, purchased a joint decreasing term life insurance policy from AFLIC.  This policy was purchased to cover a mortgage loan of $22,538.82 from CitiFinancial Mortgage.  Raul Pena died on June 27, 2002, still owing $16,440.10 on the mortgage loan.  AFLIC then paid CitiFinancial Mortgage $16,440.10.

Pena contends that the Policy was for $100,000.00 and that she is therefore still owed $83,559.90 ($100,000.00 less the $16,440.10 paid to CitiFinancial Mortgage).

## Standard of Review

This Court reviews the grant of summary judgment *de novo*, applying the same criteria used by the district court. *See Hanks v. Transcon. Gas Pipe Line Corp.,* 953 F.2d 996, 997 (5th Cir. 1992).  Summary judgment is proper if the movant can show that there is no genuine issue as to any material fact. *See* FED. R. CIV. P. 56(c).  If the movant meets this test the burden shifts to the non-movant to show that there is a genuine issue for trial. *See Taylor v. Gregg,* 36 F.3d 453, 457 (5th Cir. 1994).

To defeat a motion for summary judgment, the non-movant must rely on evidence greater than mere conclusory allegations or unsubstantiated assertions. *See Little v. Liquid Air Corp*, 37 F.3d 1069, 1075 (5th Cir. 1995) (en banc).

## The Meaning of the Policy

In her single issue on appeal, Pena contends the district court erred in concluding the Policy did not entitle her to any benefit beyond the payment of her unpaid mortgage balance to CitiFinancial Mortgage. Specifically, Pena points to the following parts of the Policy in support of her interpretation:

"Maximum Amount of Life Insurance $100,000.00"

WHO GETS PAID
. . . if claim payments are more than your account balance, the difference will be paid by separate company check to you or to the second beneficiary named in the schedule, if any, or to your estate.

Joint Life Insurance Benefit
If you or your co-insured (spouse or business partner only) die while insured for the joint life coverage, we will pay the amount of insurance in force at the time you or your co-insured dies after we receive proof of death . . ."

Maximum Amount of Life Insurance
The maximum benefit payable in the event of death during the term of the insurance is limited to the maximum amount of life insurance shown in the schedule.

In determining the meaning of the Policy, Texas rules of construction apply under the rule of diversity jurisdiction. *See Amica Mut. Ins. Co. v. Moak*, 55 F.3d 1093, 1095 (5th Cir. 1995). Under Texas law, when contractual terms are unambiguous courts

may not change the meaning of those terms. *Id.* Insurance policies are interpreted in the same way as all other contracts. *National Union Fire Ins. Co. v. CBI Indus., Inc.,* 907 S.W.2d 517, 520 (Tex. 1995).

Courts must read contracts so as to determine the true intent of the parties as expressed within the contract. *Id.* The terms of a contract are to be construed reasonably, so as to give each term contextual meaning and avoid rendering any term meaningless. *See Ideal Mut. Ins. Co. v. Last Days Evangelical Ass'n., Inc.* 738 F.3d 1234, 1238 (5th Cir. 1986).

Applying these principles, this Court finds the Policy is unambiguous when its terms are read together. The terms of the Policy clearly indicate that Pena purchased joint decreasing term life insurance worth $22,538.82 at its initiation. The Policy also indicates a term of 96 months and a premium charge of $1,114.32.

Although Pena asserts the Policy was written for $100,000.00 because that is the figure given as the "Maximum Amount of Life Insurance," no part of that line, or indeed anything else in the Policy, indicates that the Policy was actually worth that amount. The plain and ordinary interpretation of this text is that the largest amount for which any policy could be written was $100,000.00. There is no indication that the Policy was actually written for that amount.

-4-

Furthermore, Pena's interpretation would negate the modifier "maximum." It would be meaningless for AFLIC to describe a maximum amount if that value were in fact the exact amount that AFLIC owed each insured in every case no matter the premium paid or the specifics of the policy purchased.

The other provisions that Pena cites are likewise unhelpful to her interpretation. The "Who Gets Paid" clause only applies if claim payments are more than the insured's account balance. This provision does not apply to Pena, because the amount of life insurance she purchased was equal to her mortgage balance. The "Joint Life Insurance Benefit" provision likewise only applies to the amount of insurance "in force at the time" of either party's death. Because Pena purchased decreasing term life insurance the amount of insurance in force at any time after the policy's inception cannot logically be greater than the original amount purchased - in this case, $22,538.82. The "Maximum Amount of Life Insurance" provision describes a limit on benefits payable, not an amount actually owed.

The Policy states that "[t]he only insurance effective under this policy is that for which a premium is paid." The Insurance Schedule in the Policy states: "Original Amount of Decreasing Life Insurance $22,538.82." The Insurance Schedule also states: "Joint Decreasing Life Premium $1,114.23" and "TOTAL CREDIT INSURANCE PREMIUM $1,114.32." The premium charges show that the

only applicable insurance through the Policy - that for which a premium was paid - was the $22,538.82 in Joint Decreasing Life insurance.  The Policy includes maximum values for other types of insurance.  It also provides spaces for other amounts of insurance and other premiums, each filled in "N/A" or "NONE." This format shows that while the Policy might have included other types of insurance paid for with other premiums in this case it did not.

The district court's reading of the Policy also makes sense considering that the Policy was purchased to secure a loan of $22,538.82 from CitiFinancial Mortgage.

Consequently the district court did not err by determining that the Policy did not entitle Pena to receive any benefit other than the payment of the remaining mortgage balance to CitiFinancial Mortgage.  As a result, this Court affirms the judgment of the district court.

AFFIRMED.